1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Hezekiah Esau Baker,

                    Plaintiff

    v.

WestStar Credit Union,

                    Defendant.

Case No. 2:21-cv-02128-CDS-BNW

**Order Granting Defendant's Motion to Compel Arbitration, Denying as Moot Defendant's Motion to Strike, Denying as Moot Plaintiff's Motion for Leave to File An Opposition, and Dismissing the Case Without Prejudice**

(ECF Nos. 21; 39; 40)

Pending before the Court is Defendant WestStar Credit Union's Motion to Compel Arbitration and Stay the Proceedings which was filed on May 17, 2022. ECF No. 21. In sum, the motion contends that arbitration is consistent with the provisions of an agreement Plaintiff Hezekiah Baker entered when he became a member of WestStar in June of 2013. Baker, proceeding *pro se*[1], filed what this Court liberally construes as an opposition to the motion on May 23, 2022, essentially arguing that the motion should be denied because he never had the opportunity to review or sign the agreement, and his signature was incorporated onto documents electronically. *See generally* ECF No. 22. Weststar's reply was filed on June 6, 2022. ECF No. 25. After careful consideration of the moving papers, the relevant law, and the record in this case, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; LR 78-1. For the reasons set forth below, I grant the motion to compel arbitration

---

[1] Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff's pleading is titled "Notice...for a[n] Order Compelling Production of Documents Regarding Plaintiff's Interrogatories in Opposition to Defendants Answer to Complaint to Compel Arbitration and Stay of All Proceeding." ECF No. 22. Currently, this Court only addresses arguments related to the pending motion to compel arbitration.

1  and dismiss this case without prejudice. Further, because I am dismissing this action without

2  prejudice, I do not address WestStar's Motion to Strike (ECF No. 39) or Plaintiff's Motion for

3  Leave to File An Opposition (ECF No. 40). Rather, those motions are both denied as moot.

4       I.      **Relevant Background Information**

5       Plaintiff Hezekiah Esau Baker initiated this action on November 30, 2021, alleging that

6  WestStar Credit Union and its employees violated 42 U.S.C. § 407 by transferring Social

7  Security benefits from his savings account into his checking account to pay a debt.[2] ECF Nos. 2,

8  4. On March 31, 2022, the Amended Complaint, ECF No. 4, was screened by United States

9  Magistrate Judge Brenda N. Weksler. ECF No. 6. She found that given "the liberal construction

10 courts are to afford *pro se* complaints, it appears Plaintiff states a claim against WSCU at least

11 for purposes of surviving screening" and ordered that the case would proceed against WestStar.

12 *Id.* WestStar then filed the instant motion. ECF No. 21.

13      In support of their assertion that Baker agreed to arbitrate all claims regarding his

14 account, WestStar submitted the affidavit of Donna Rumph, a copy of the signature card Baker

15 executed when he opened his account with the credit union, all subsequent signature cards

16 executed by Baker, a copy of the Important Account Information for Our Members, a Change of

17 Address Form executed by Baker, and a copy of the Notice of Change to the Terms and

18 Conditions of Your Account, which included a redacted copy of Baker's June 2020 bank

19 statement. Rumph stated in her affidavit that the signature card Baker executed when he

20 opened his account included the "agreement to the terms and conditions outlined in the

21

22     [2] This is not the first time Baker has sued WestStar over this transfer of funds from his savings

23 account. *See* 2:21-cv-01332-GMN-NJK. Therein, Baker filed a Notice of Voluntary Dismissal on September 15, 2021, *id.* at ECF No. 14, subsequently filed two Motions to Reopen the case, *id.* at ECF Nos. 15; 18, then

24 filed a second Notice of Voluntary Dismissal, *id.* at ECF No. 19. Plaintiff continues to file amended complaints and motions despite the fact the case is closed. *See generally id.*

1 Important Account Information for Our Members." ECF No. 21-1 at 2. The Important Account

2 Information for Our Members provided:

3    ARBITRATION AND WAIVER OF CLASS ACTION

4    You and the credit union agree that we shall attempt to informally settle any
     and all disputes arising out of, affecting, or relating to your accounts, or the
5    products or services the credit union has provided, will provide or has offered
     to provide to you, and/or any aspect of your relationship with the credit union
6    (hereafter referred to as the "Claims"). If that cannot be done, then you agree
     that any and all Claims that are threatened, made, filed or initiated after the
7    Effective Date (defined below) as this Arbitration and Waiver of Class Action
     provision ("Arbitration Agreement"), even if the Claims arise out of, affect or
8    relate to conduct that occurred prior to the Effective Date, shall, at the election
     of either you or us, be resolved by binding arbitration . . . Either you or we may
9    elect to resolve a particular Claim through arbitration, even if one of us has
     already initiated litigation in court related to a Claim, by: (a) making written
10   demand for arbitration upon the other party, (b) initiating arbitration against
     the other party, or (c) filing a motion to compel arbitration in court.
11
     ECF No. 21-3 at 10.
12

13    The affidavit continues to say that the Important Account Information for Our Members

14 included a section that stated "[w]ritten notice we give you is effective when it is deposited in

15 the United States Mail with proper postage and addressed to your mailing address we have on

16 file." ECF No. 21-1 at 2. It adds that the "Notice of Change to the Terms and Conditions of Your

17 Account was provided," and "[t]hat document included a mandatory arbitration provision and

18 the ability to opt out of arbitration." *Id.* WestStar argues that by not exercising his right to opt-

19 out, the agreement necessitates the action be moved into arbitration. ECF No. 21 at 4.

20    Baker opposed WestStar's motion on several grounds, first asserting that his signature

21 was collected on an electronic device and because the signature was collected electronically, it

22 was incorporated by fraud. ECF No. 22 at 3, 8-9, 12-13. Baker contends that he did not explicitly

23 sign a document setting forth an arbitration clause because he only electronically input his

24 signature to obtain a debit card. ECF No. 22 at 8-9.

3

1    Baker does not assert that he did not sign the signature card when he initially opened his

2  account and received the debit card. He asserts that he never agreed to arbitrate his claims

3  because he never received or signed an arbitration agreement. ECF No. 22 at 8. However, Baker's

4  statement that he was not provided the arbitration provision is contradicted by the signature

5  card itself, which expressly states that he did in fact elect to receive an electronic version of the

6  Important Account Information for Our Members:

7      I choose to receive the Important Account Information for Our Members
       disclosure and Electronic Fund Transfer disclosure (each contains important
8      information regarding credit union products, services, and account holder(s) legal
       rights) **Via Electronic Means**

9

10     ECF No. 21-2 at 2 (emphasis added).

11     **II.     Legal Standard**

12     The Federal Arbitration Act ("FAA"), which governs the enforceability of arbitration

13  agreements in contracts, was enacted "in response to widespread judicial hostility to arbitration

14  agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the Act, "[a]

15  written provision in … a contract evidencing a transaction involving commerce to settle by

16  arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and

17  enforceable, save upon such grounds as exist at law or in equity for the revocation of any

18  contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration." *Moses H.*

19  *Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

20     "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but

21  instead mandates that district courts shall direct the parties to proceed to arbitration on issues

22  as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.*, 207

23  F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean v. Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

24

4

1    In deciding whether to compel arbitration, the court may not review the merits of the

2 dispute, rather, the court's role is "limited to determining (1) whether a valid agreement to

3 arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."

4 *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the Court finds that

5 those questions are answered in the affirmative, the Court must compel arbitration. *Id.*; *see also*

6 *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

7    The party seeking to compel arbitration "bears the burden of proving the existence of a

8 valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v.*

9 *Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and

10 citation omitted). In determining the validity of an arbitration agreement, the Court applies

11 state law contract principles. 9 U.S.C. § 2. To be valid, an arbitration agreement needs to be

12 contained in a written record, even though a signature is not required. *Tallman v. Eighth Jud. Dist.*

13 *Ct.*, 359 P.3d 113, 119 (Nev. 2015) (noting that the arbitration contract must be in writing, but

14 "neither the FAA nor the UAA…require that the arbitral contract be executed"); *see also*

15 *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970) ("Although an agreement to

16 arbitrate future controversies must be in writing, a signature is not required." (internal citation

17 omitted)).

18    Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case

19 fall within the ambit of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language

20 supports a mandatory stay, the Ninth Circuit has interpreted the FAA provision to allow a

21 district court to dismiss the action. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.

22 1988). Consequently, when a district court decides that an arbitration agreement is valid and

23 enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v.*

24 *MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

1    **III.    Analysis**

2    This Court finds that a valid arbitration agreement existed between the parties and that

3    the agreement encompasses Plaintiff's claims at issue. As a threshold matter to both of those

4    issues, however, the Court addresses its ability to decide the arbitrability of the matter.

5            *i.    Neither Party Clearly nor Unmistakably Delegated Arbitrability to an Arbitrator*

6    "[T]he question 'who has the primary power to decide arbitrability' turns upon what the

7    parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)

8    (emphasis in original). "Unless the parties clearly and unmistakably provide otherwise, the

9    question of whether the parties agreed to arbitrate is to be decided by the court, not the

10   arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

11   Here, the parties did not "clearly and unmistakably" delegate the issue of validity to an

12   arbitrator. Rather, the alleged agreement contains a provision stating that "[e]ither you or we

13   [i.e., Baker or WestStar] may elect to resolve a particular Claim through arbitration...by...filing a

14   motion to compel arbitration in court." ECF No. 21-3 at 8. Thus, this Court shall resolve the

15   arbitrability issues.

16           *ii.    A Valid Arbitration Agreement Exists*

17   A valid arbitration agreement exists between the parties. WestStar alleges that the

18   documents Baker signed when opening his credit account with WestStar included a file entitled

19   "Important Account Information for Our Members," the terms of which included the arbitration

20   clause at issue. Motion to Compel Arbitration, ECF No. 21 at 4; *see also* ECF No. 21-3 at 8 (exhibit

21   containing the full language of the contract). Baker contends that he never actually signed the

22   arbitration agreement, but rather, that he signed "a gadget, a small mechanical, or electronic

23   device or tool" (i.e., an electronic signature capture pad) which WestStar then used to

24

1  "incorporate [Baker's] signature onto any document [WestStar] desired at any time." Response

2  to Motion to Compel, ECF No. 22 at 3.

3              A contract may incorporate documents and terms by reference. Where it is
              clear that a party is assenting to a contract that incorporates documents by
4            reference, the incorporation is valid – and the terms of the incorporated document
              are binding – so long as the incorporation is clear and unequivocal, the reference is
5            called to the attention of the other party and he consents thereto, and the terms of
              the incorporated document are known or easily available to the contracting
6            parties.

7  *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019). The signature card signed by Baker certifies

8  "[a]greement to the terms and conditions outlined in the Important Account Information For

9  Our Members disclosure and any other material pertaining to the account." ECF No. 21-2. This

10  statement plainly refers to an external document, and plainly states that Baker agreed to be

11  bound by the terms contained therein. Moreover, Baker's assertion that he did not actually

12  receive the Important Account Information For Our Members disclosure does not defeat the

13  signature card's statement that Baker bound himself to the terms contained therein.

14          Baker offers no evidence to support his claims that his signature was fraudulently placed

15  on subsequent signature cards, or evidence that WestStar incorporated his signature onto an

16  arbitration agreement. WestStar itself does not provide direct evidence that Baker signed an

17  arbitration agreement. Instead, WestStar's exhibit (ECF No. 21-2 at 2) shows that on June 19,

18  2013, Baker placed his electronic signature on the signature card thereby certifying "[a]greement

19  to the terms and conditions outlined in the Important Account Information For Our Members

20  disclosure and any other material pertaining to the account." By signing the signature card,

21  Baker agreed to arbitrate every claim arising from or relating in any way to his account. *See, e.g.,*

22  *Freitas v. Cricket Wireless, LLC*, 2022 WL 1082014, at *9 (N.D. Cal. Apr. 11, 2022) (stating that "the

23  electronic signature agreements are valid in all jurisdictions").

24

1        I now turn to some of Baker's counterarguments, including his position that the

2   agreement is void because "any agreement containing an arbitration clause include 'specific

3   authorization for the provision which indicates that the person has affirmatively agreed to the

4   provision' that an arbitration clause that fails to include such an authorization is void and

5   unenforceable." ECF No. 22 at 11. He added that "any valid arbitration agreement must reflect

6   the conscious, mutual and free will of the parties to resort to arbitration." *Id.*

7        It appears Baker is drawing support for his position from NRS 597.995, a Nevada

8   provision requiring that "an agreement [that] includes a provision [that] requires a person to

9   submit to arbitration any dispute arising between the parties to the agreement must include

10  specific authorization for the provision [that] indicates that the person has affirmatively agreed

11  to the provision." Nev. Rev. Stat. § 597.995(1). But NRS 597.995 is preempted by the FAA.

12  *MMAWC, LLC v. Zion Wood Obi Wan Trust*, 448 P.3d 568, 571 (Nev. 2019) (holding that the FAA

13  preempts NRS 597.995 because "[the specific-authorization requirement] singles out arbitration

14  provisions as suspect and violates the FAA"). To the extent Baker argues that I should import

15  NRS 597.995's heightened authorization requirements to the FAA, I decline to do so because

16  that would be contrary to law.

17       Furthermore, Baker interprets this statute to require that an arbitration agreement be a

18  standalone document. ECF No. 22 at 12. Baker's interpretation has no basis in law. The Nevada

19  Supreme Court has ruled how an arbitration agreement may satisfy NRS 597.995. *See Fat Hat,*

20  *LLC v. DiTerlizzi*, 2016 WL 5800335, at *2 (Sept. 21, 2016) (unpublished). It held that an

21  arbitration clause inside an agreement that lacked a separate line to acknowledge the arbitration

22  clause specifically did not comply with the statute, but an agreement that required the signers

23  "to fill in their names and addresses in the blank spaces of the provision, explicitly stating that

24  the agreement to arbitrate was effective" did. *Id.* So the statute does not require a standalone

agreement, just an additional, more specific acknowledgment. Here, the acknowledgment requirement was met when Baker signed the signature card and, during that sign-up process, selected the checkbox to receive "important information regarding . . . account holder(s) legal rights" by electronic means rather than "Via Paper[3]." ECF No. 21-2 at 2.

Even if I were to find that NRS 597.995 could apply to this case and I adopted Baker's interpretation, the Notice of Change to the Terms and Conditions of Your Account (ECF No. 21-5 at 2), which clearly sets forth the terms and conditions of arbitration, provided to Baker with his June 2020 bank statement would satisfy the statute as a "standalone" document. With that, Baker was placed on notice he was subject to an arbitration agreement **unless** he exercised his right to opt-out of the agreement.

Finally, the Court finds it important to note that Baker could have opted out of the arbitration provision. Not only does WestStar's evidence show that Baker received a paper version of the arbitration agreement (ECF No. 21-5), but it also forecloses Baker's argument that they "did not allow [him] time to review the document and reach a decision whether to endorse it or not." ECF No. 22 at 9. The Notice of Change to the Terms and Conditions of Your Account conspicuously warned Baker that he would be deemed to have accepted the arbitration program unless he opted out within 30 days, but it also provided directions on how to do so. ECF No. 21-5. The very existence of the opt-out option provided Baker a meaningful choice. He could have opted-out of the arbitration agreement but did not.

. . .

. . .

---

[3] This further negates Baker's argument that WestStar did not provide him "the opportunity to review the document ... because all the Defendant had to do was print the document, [and] present it to Plaintiff." ECF No 22 at 9. The signature card presents two options (print or electronic) and Baker chose to receive the information electronically. ECF No. 21-2.

*iii.   The Arbitration Provision Covers this Dispute*

The arbitration agreement unambiguously expresses that "*all disputes arising out of, affecting, or relating to your accounts, or the products or services the credit union has provided*, will provide or has offered to provide to you, and/or any aspect of your relationship with the credit union...at the election of either you or us, be resolved by binding arbitration..." ECF Nos. 21-3 at 10-11; 21-5 (emphasis added). This lawsuit is a dispute that has arisen related to the checking and savings accounts Baker held at WestStar. *See generally* ECF No. 4. Baker does not address this point. In fact, Baker's opposition is silent on whether his claims against WestStar would fall within the scope of the arbitration agreement; he solely argues that he never actually consented to the agreement. ECF No. 22.

WestStar has sufficiently demonstrated that Baker agreed to arbitrate this dispute. Because the signature card signed by Baker expressly incorporates WestStar's terms and conditions, and because Baker does not dispute that he signed the signature card to open an account or that he failed to opt-out of the modified terms and conditions of the account, the court concludes that there exists a valid agreement to arbitrate.

*iv.   This Action Should Be Dismissed*

Finally, having determined that the Agreement is binding, and that Baker's claims are arbitrable and, therefore, *must* be submitted to arbitration, the Court turns to the question of staying or dismissing Baker's action.

The FAA provides that, "upon being satisfied that the issue involved in [a] suit...is referable to arbitration..., [a court] shall on application of one of the parties stay the trial of the action until such arbitration has been had..., providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. However, "[t]he Ninth Circuit has held...that § 3 does not impose a mandatory duty to stay on district courts. Thus, even where a party seeks a

1  stay under § 3, the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the

2  claims before it are arbitrable." *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166 (C.D. Cal. 2008)

3  (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Thinket Ink Info. Res., Inc. v.*

4  *Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)).

5          In this case the language of the arbitration agreement mandates arbitration for "any and

6  all disputes arising out of, affecting, or relating to your accounts..." In light of the Court's

7  conclusion that Baker must be compelled to arbitrate all the claims asserted in this action,

8  "retaining jurisdiction and staying the action will serve no purpose." *Alford v. Dean Witter Reynolds,*

9  *Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (noting that when all issues are raised in an action are

10  arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action

11  will serve no purpose). Because there are no live controversies remaining in this action, the

12  Court concludes that it should dismiss Baker's claims without prejudice.

13  . . .

14  . . .

15  . . .

16  . . .

17  . . .

18  . . .

19  . . .

20  . . .

21  . . .

22  . . .

23  . . .

24  . . .

IV.     Conclusion

IT IS THEREFORE ORDERED that Defendant WestStar Credit Union's Motion to Compel Arbitration (ECF No. 21) is **GRANTED**.

IT IS FURTHER ORDERED that the parties shall promptly submit this matter to binding arbitration in accordance with the Notice of Change of Terms and Conditions of Your Account (ECF No. 21-5 at 2); and that this matter shall henceforth proceed by arbitration.

IT IS FURTHER ORDERED that Defendant WestStar Credit Union's Motion to Strike (ECF No. 39) is **DENIED AS MOOT**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File An Opposition (ECF No. 40) is **DENIED AS MOOT**.

IT IS FURTHER ORDERED that this case is dismissed without prejudice.

The Clerk of Court is instructed to close this case.

DATED this August 22, 2022.

_____
Cristina D. Silva
United States District Judge